IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EARL D. SMITH,

        Plaintiff,                      No. CIV S-09-0654 EFB P[1]

    vs.

B. PRIOLO, et al.,

        Defendants.            ORDER AND
                                        FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. He proceeds on an Eighth Amendment claim against defendants Priolo and Delgado predicated on allegations of excessive force, and an Eighth Amendment claim against defendant Dharlingue premised on an alleged failure to protect plaintiff. Defendants move for summary judgment. For the following reasons, the motion must be denied.

**I.    Background/Facts**

        It is undisputed that at all times relevant to this case, plaintiff was an inmate at High Desert State Prison ("HDSP"), defendants Priolo and Delgado were correctional officers at

---

[1] Defendants failed to respond to the court's order filed on August 31, 2010, Dckt. No. 17, directing that they complete and return the form indicating either their consent to proceed or request for reassignment to a district judge. Accordingly, the clerk will be directed to randomly assign this case to a district judge.

1

1  HDSP, and defendant Dharlingue was a correctional lieutenant at HDSP.  Defs.' Mot. for Summ.
2  J. ("Defs.' MSJ"), Stmt. of Undisputed Facts in Supp. Thereof ("DUF") 1-4.  On December 12,
3  2007, defendants Priolo and Delgado were releasing inmates from the section of the prison
4  where plaintiff was housed in order to conduct door maintenance.  DUF 6-7.

5  The majority of the other material facts pertaining to plaintiff's claims are disputed by the
6  parties.  According to defendants' version of the incident, when Priolo and Delgado were
7  releasing inmates, plaintiff and his cellmate refused to "cuff up" and go to the yard.  DUF 7.
8  Priolo notified Sergeant Barton, who is not a party to the present action, of their refusal to put on
9  handcuffs.  DUF 8.  After a conversation with Sergeant Barton, plaintiff and his cellmate agreed
10 to put on handcuffs.  *Id*.  Plaintiff then walked to the back of his cell and sat on his bunk.  DUF
11 10.  Priolo order plaintiff to return to the cell door.  DUF 11.  Plaintiff then stood up and walked
12 straight at Priolo.  DUF 12.  Priolo was unaware of plaintiff's intentions, so he grabbed
13 plaintiff's right arm and faced plaintiff away from him.  DUF 13.  Priolo then escorted plaintiff
14 to the F section shower, while Delgado escorted plaintiff's cellmate.  DUF 9, 14.  As Priolo
15 walked with plaintiff, plaintiff turned his body towards Priolo.  *Id*.  Priolo told plaintiff to stop
16 resisting and to "get on the wall."  DUF 15.  Plaintiff again turned his body towards Priolo.  DUF
17 16.  Priolo then took plaintiff to the ground, maintaining control of plaintiff's upper body, while
18 Delgado gained control of plaintiff's legs.  DUF 18-20.  Another officer placed plaintiff in
19 restraints, and plaintiff was subsequently placed in the F2 shower.  DUF 21.

20 Plaintiff disputes several portions of defendants' version of the events.  Plaintiff declares
21 that when he stood up from his bunk, he exited his cell backwards.  Dckt. No. 31, Pl.'s Opp'n,
22 Decl. in Supp. Thereof ("Smith Decl.") ¶¶ 23-25.  Plaintiff claims that he was then escorted by
23 both Priolo and Delgado to the F section shower holding cell.  *Id*. at ¶ 25.  As they walked,
24 Priolo and Delgado began pulling back and forth on plaintiff's arms.  *Id*. at ¶ 27.  Although
25 plaintiff was not resisting, Priolo and Delgado slammed plaintiff face-first to the ground.  *Id*. at ¶
26 28.  Plaintiff contends that after he was placed in restraints, "Priolo and Delgado continued to

2

1  violently apply their body weight to plaintiff[']s neck, back, and legs to maximumize [*sic*] the
2  unbearable pain." *Id*. at ¶ 30.  Plaintiff claims he "was held in [this] position for about two
3  minutes." *Id*. at ¶ 31.  Defendant Dharlingue observed this altercation, but did not intervene. *Id*.
4  at ¶ 32.

5  The parties do not dispute that as a result of the altercation, plaintiff suffered an abrasion
6  to his lip, a loose tooth, and swelling to his left eye, upper lip, and knee.  DUF 22.

7  **II.    Summary Judgment Standards**

8  Summary judgment is appropriate when there is "no genuine dispute as to any material
9  fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary
10 judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant
11 to the determination of the issues in the case, or in which there is insufficient evidence for a jury
12 to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600
13 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*
14 *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment
15 motion asks whether the evidence presents a sufficient disagreement to require submission to a
16 jury.

17 The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims
18 or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to
19 "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
20 trial.'" *Matsushit*a *Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)
21 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,
22 under summary judgment practice, the moving party bears the initial responsibility of presenting
23 the basis for its motion and identifying those portions of the record, together with affidavits, if
24 any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477
25 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving
26 party meets its burden with a properly supported motion, the burden then shifts to the opposing

party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the

4

nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual dispute in question, that party must produce evidence sufficient to support its factual assertion. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken

5

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue. *Celotex.*, 477 U.S. at 323. Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

On August 31, 2010, the undersigned informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## III.   Discussion

Defendants move for summary judgment, arguing that: 1) there is no evidence that defendants Priolo and Delgado used excessive force, 2) there is insufficient evidence to establish that defendant Dharlingue failed to protect plaintiff, and 3) defendants are entitled to qualified immunity.

### A.   Excessive Force

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . .: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). While malicious and sadistic uses of force always violate contemporary standards of decency, not every "malevolent touch" by a prison guard is actionable as an Eighth Amendment violation. *Id.* at 9. "The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (internal quotation marks and citations omitted). What violates the Eighth Amendment is "the unnecessary and wanton infliction of pain," i.e., infliction of suffering that is "totally without penological justification."

6

*Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The following factors are relevant to a determination of whether a use of force violated the Eighth Amendment: (1) the need for the use of force; (2) the relationship between the need for force and the amount used; (3) the extent of injury inflicted; (4) the extent of the threat the officers reasonably perceived the plaintiff to pose to staff and inmate safety; and (5) any efforts made to temper the severity of the forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Defendants argue that the evidence submitted, rather than showing that defendants Priolo and Delgado used excessive force, establishes that the force used was reasonable and in response to a perceived threat to officer safety. Defs.' MSJ at 6-7. If defendants' version of what occurred is credited, that would appear to be the case. However, plaintiff, himself a percipient witness, disputes defendants' version in material ways. Although it is undisputed that plaintiff initially refused to put on handcuffs, plaintiff's version, if believed at trial, supports the finding that there was no other resistance by plaintiff. Plaintiff declares that he was handcuffed and that he stepped out of the cell by walking backwards. Smith Decl. ¶¶ 22, 23. He also asserts that he was not resisting when Priolo and Delgado began pulling back and forth on his arms or when he was slammed to the ground. *Id*. at ¶¶ 27-30. Plaintiff declares that he was not resisting when "Priolo and Delgado continued to violently apply their body weight to [his] neck, back, and legs." *Id*. at ¶ 30. Furthermore, it is undisputed that as a result of the altercation, plaintiff sustained injuries.

Plaintiff's evidence is sufficient to sustain a finding that defendants physically abused him without provocation. In plaintiff's verison of the altercation, he did not pose a threat to defendants and there was no penological justification for using force. Under these circumstances, a jury could reasonably find that defendants Priolo and Delgado applied force maliciously and sadistically or simply to inflict punishment rather than gain control, in violation of the Eighth Amendment. Thus, summary judgment on this claim is not appropriate.

////

### B.      Failure to Protect

Plaintiff claims that defendant Dharlingue failed to protect him because he observed the altercation between plaintiff and defendants Priolo and Delgado, but did not intervene. In claiming that a prison official failed to protect an inmate in violation of the Eighth Amendment, the relevant inquiry is whether the prison official, "acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation omitted). To be deliberately indifferent, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842. The "obviousness of a risk," however, is not conclusive, and "a prison official may demonstrate that the obvious escaped him . . ." *Id.* at 843, n.8.

Defendants argue that Dharlingue is entitled to summary judgment because there is no evidence that he acted with deliberate indifference to plaintiff's safety. According to defendants, there is no evidence that Dharlingue had any knowledge that Priolo and Delgado were going to take plaintiff to the ground, and therefore he did not have the opportunity to intervene. While defendants are correct that there is no evidence that Dharlingue had prior knowledge that an altercation would occur, that fact alone is insufficient to show that he could not have intervened. Plaintiff's version of what occurs not only alleges that he was slammed to the ground, but also indicates that defendants Priolo and Delgado violently applied their body weight to plaintiff's neck, head and legs. Smith Decl. ¶ 30. Plaintiff declares that Priolo and Delgado continued to apply force for two minutes while plaintiff "was screaming out loud as a result of the excruciating pain." *Id*. at ¶ 31. Plaintiff further declares that Dharlingue observed these actions but did not intervene. *Id*. at ¶ 32. If these allegations are believed, a reasonable jury could find

8

that Dharlingue was deliberately indifferent to a known substantial risk of injury to plaintiff.

Although there is no indication that Dharlingue could have prevented plaintiff from being slammed to the floor, there is sufficient evidence to show that Dharlingue was aware that Priolo and Delgado posed a risk to plaintiff's safety once plaintiff was taken to the ground. Plaintiff's testimony is that Dharlingue observed the altercation for approximately two minutes, but took no action. While defendants dispute plaintiff's account of what happened, if a jury credits his testimony it could reasonably find that Priolo and Delgado's conduct constituted excessive force, and that by observing the use of such force for two minutes without interjecting, Dharlingue disregarded an excessive risk to plaintiff's safety. Therefore, plaintiff's evidence is sufficient to create a genuine dispute as to whether Dharlingue failed to protect him. Accordingly, summary judgment on this claim must be denied.

### C.     Qualified Immunity

Defendants contend that they are protected under the doctrine of qualified immunity. Qualified immunity protects government officials from liability for civil damages where a reasonable person would not have known their conduct violated a clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). In determining whether the doctrine of qualified immunity provides a government officer protection, a court must make two inquires: 1) do the facts alleged show that the officer violated a constitutional right; and 2) was the constitutional right well established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, (2009) (courts have discretion to decide which of the two *Saucier* prongs to address first). A plaintiff invokes a "clearly established" right when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 40 (1987).

Whether the defendant violated a constitutional right and whether the right was clearly established at the time of the violation are pure legal questions for the court. *See Phillips v. Hust*, 477 F.3d 1070, 1079 (9th Cir.2007). However, even where a right was clearly established,

the question remains whether the defendant's actions violated such right. That question may or may not turn on facts which are in dispute. "If a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir.2003); *see also Martinez v. Stanford*, 323 F.3d 1178, 1183–85 (holding that the district court erred by granting summary judgment where there were genuine issues of material fact regarding the reasonableness inquiry of the second Saucier prong).

Defendants Priolo and Delgado are not entitled to summary judgment based on qualified immunity under the first prong because, as explained above, there remains a genuine dispute as to whether these defendants violated plaintiff's constitutional rights. Defendants contend that Priolo and Delgado are entitled to qualified immunity under the second prong because reasonable officers in their position would not have known that their actions violated a clearly established law. *Saucier*, 533 U.S. at 202. ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").

It is clearly established that a prison official's use of excessive force violates the constitution. *Martinez*, 323 F.3d at 1184-85. Furthermore, the Court of Appeals for the Ninth Circuit has held that "by 1985, the law of this circuit would have put reasonable officers on notice that an 'unprovoked and unjustified attack by a prison guard' violated clearly established constitutional rights" *Lolli v. County of Orange*, 351 F.3d 410, 421-22 (9th Cir. 2003) (*quoting Felix v. McCarthy*, 939 F.2d 699, 701-02 (9th Cir.1991).

Viewing the evidence in the light most favorable to plaintiff, it was not reasonable for Priolo and Delgado to believe that their conduct was lawful under the circumstances. As explained above, plaintiff's evidence--if believed--shows that Priolo and Delgado were not provoked by plaintiff and there appeared to be no justification for the use of force. A reasonable officer in Priolo and Delgado's position would have known that it was unlawful to slam plaintiff

10

to the floor and violently apply their body weight given that plaintiff was handcuffed and not resisting.

For similar reasons, defendant Dharlingue is not entitled to summary judgment based qualified immunity. Under the first *Saucier* prong, as discussed above, there remains a genuine dispute as to whether he violated the Eighth Amendment by failing to protect plaintiff. Dharlingue is also not entitled to summary judgment based on qualified immunity under the second prong. The Ninth Circuit held as early as 1995, that a prison official violates the Eighth Amendment where he fails to intervene to prevent another officer's illegal use of force against an inmate. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). Plaintiff has submitted evidence in the form of his own testimony as to what he perceived at the time that Dharlingue was present and observed Priolo and Delgado unlawfully using force against plaintiff, but took no action to intervene or take any steps to prevent the use of that force. A reasonable officer in Dharlingue's position would have known that he was required to intervene to prevent the unlawful use of force against plaintiff.

Accordingly, defendants are not entitled to summary judgment based on qualified immunity for plaintiff's excessive force and failure to protect claims.

**IV.    Conclusion**

For the reasons stated above, it is hereby ORDERED that the Clerk of the Court randomly assign a United States District Judge to this case.

Further, it is hereby RECOMMENDED that defendants' May 20, 2011 motion for summary judgment be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

1  within the specified time may waive the right to appeal the District Court's order. *Turner v.*
2  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
3  Dated: February 23, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE